MALOTUESE LIVINGSTONE UTU, UTU SINAGEGE
for UTU FAMILY, and SULI GOGO, Objectors

v.

PEPA FUATA, Claimant

PEPA FUATA for himself and on behalf
of the FUATA FAMILY, Plaintiffs

v.

UTU SINAGEGE, LIVINGSTONE POASA UTU and FAMILY,
Defendants

GOGO SULI, Plaintiff

v.

FUATA PEPA for FUATA FAMILY, and PASA TURITURI,
Defendants

High Court of American Samoa
Land and Titles Division

LT No. 04-90
LT No. 09-89
LT No. 19-89

November 26, 1990

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Utu Sinagege R.M., Charles V. Ala'ilima
For Pepe Fuata, Asaua Fuimaono and Tau'ese P.F. Sunia
For Gogo Suli, Fai'ivae A. Galea'i

The principal parties in these consolidated matters are the respective senior matai of the Utu family, the Gogo family, and the Fuata family, all of the village of Amouli, Eastern District. They each lay claims on behalf of their respective families to an area of land in the village of Amouli, known as "Mataava." The case docketed LT No. 09-89 commenced with the application of Fuata Pepa to enjoin a member of the Utu family, Livingstone Utu, from making repairs to his house which is located on a certain part of "Mataava." The matter docketed LT No. 19-89 arose upon Gogo's objection to a separation agreement, relative to the same land area, between Fuata and Pasa Turituri, which Fuata had sought to have registered. Subsequently, Fuata surveyed his communal claim to "Mataava," which he then offered for registration pursuant to A.S.C.A. §§ 37.0101 et seq. The registration application attracted the objections of the Utu and Gogo families resulting in the matter docketed LT No. 04-90.

Historically, "Mataava," according to the "fa'alupega"[1] books,[2] is not only the traditional site of Utu's "maota" (guest house), but also the site of the Amouli village "malae" (the village green or open space used for assembly and various village gatherings). A good part of the testimony, therefore, centered on family and village history, albeit contradictory, conflicting, and, in certain areas, even noticeably confused. (The only consensus about the land was the origin or explanation of its name, "Mataava," --- the opening through the reef --- because of its location directly opposite a passage through the reef.) The testimony, however, took on the unmistakable purpose of asserting competing claims to historical prominence as a basis for claiming original settlement and occupation of this rather central and important area of village realty. It thus became painfully clear that there was another underlying controversy presented for resolution with these land matters, namely, a quarrel about the identity of the original settlor or founding father of the village --- an issue which has in turn bred intense rivalry about social importance and rank, as well as the relationship between one matai and the other.[3]

Another common purpose associated with each party's assertion of historical prominence is that it also provided a basis for claiming that

---

[1] A Samoan village or "nu'u" is generally comprised of a number of extended family groups or households each headed by a matai. The social structure of the village is conveniently found in its "fa'alupega," or village salutation --- the ceremonial greeting of its principal matai in accordance with established social ranking and status. Thus the fa'alupega conveniently summarizes the constitution of a village's fono (council of matai). It also provides the village with its identity and signifies its autonomy. The orators take great pride in being able to commit to memory the fa'alupega of the different villages which is recited at all formal gatherings prior to speech making.

[2] Village fa'alupega were early collected by the London Missionary Society, now the Congregational Christian Church in Samoa, in a publication called "O Le Tusi Fa'alupega." A recent edition is "O Le Fa'avae O Samoa Anamua," (Malua Printing and Publishing 1985). Another early recording of fa'alupega may be found in Augustin Kramer, Die Samoa-Inseln. 2 vols (Stuttgart 1902-1903). *See also* "O Le Tusi Fa'alupega O Samoa Atoa," (Methodist Printing Press in Samoa 1985).

[3] This aspect of the dispute ---- social standing, rank, and inter-relationship as leading matai --- is difficult to fathom. These can hardly be issues of contention. The fa'alupega must have been intoned or formally recited a countless number of times at village gatherings before; the Utu and Gogo on the one hand, and the Fuata and Manaea on the other, must have taken their respective appointed positions in the meeting house a countless number of times before; the parties and their respective predecessors must have experienced the appointed order for the serving of kava at countless 'ava ceremonies previously held.

the other sides' rights to "Mataava" were derived through claimant's forebears. Therefore, an adverse party's undisputed presence on the land today was readily explained away as stemming from "permission" given in bygone days by claimant's illustrious (and invariably generous) ancestor.[4]

Ancestral permission may be a very relevant and material issue where the evidence suggests a traditional relationship of subservience between one party and another and that "tautua" (traditional service) has been habitually rendered by one to that other. Obviously, in a situation where there is permission coupled with tautua, there is an appointment to the use of land with customary strings attached; a scenario which is the antithesis of an absolute donative intent. Here, however, there was no credible evidence of such a subservient relationship existing between any of the parties, although Utu did attempt to argue that the people of Amouli were all one family, namely, the Utu family, of which he is the senior matai. Thus, as head of this one family village, Utu maintains that he holds "pule" to all village lands. The immediate difficulty with this claim is that it is singularly held by Utu and certainly not endorsed by Chief Gogo nor Orator Fuata, who are leading matai in their own right. (We also noted a similar rejection of Utu's claim by Faleafaga, another matai of Amouli, in the answer he filed in the pending matter, *Utu v. Ben Faleafaga*, LT No. 24-87.) Secondly, and at least for purposes of landholding, the Court has necessarily rejected this "one" family thesis: 1) when it upheld Chief Faleafaga's claim, on behalf of the Faleafaga family, to communal land holdings in the village of Amouli in *Faleafaga v. Talaetau*, LT No. 23-84 (1984), *aff'd Talaetau v. Faleafaga*, AP No. 23-84 (1985); and 2) when it rejected a petition by the Utu family to permanently enjoin the Paolo family from building on a part of "Mataava" in *Lavea'i Utu v. Paolo*, LT No. 1391-74 (1975). Similarly, the Paolo family of Amouli have also been recognized as landowners in *Utu and Paolo v. Fonoti*, 1 A.S.R. 208 (1910).

---

[4] Ancestral "permission" is a submission frequently heard from land claimants to explain an opposing party's actual possession of disputed land. It is a submission which counters opposing claims to adverse possession. At the same time, case law development has generally taught that mere "permission" to use land only yields to the grantee a personal license revocable at will by the grantor. *See, e.g., Magalei v. Tago*, 3 A.S.R. 185 (1955). Consequently, the Court is often confronted with the petition which prays for the application of common law licensing concepts to a land grant of yore based on ancestral "permission" that pre-dated the establishment of government and the adoption of the common law.

The Court learned very little from the testimony on family/village history and tradition. We looked to the other evidence. Gogo, although he did not submit a survey, claimed a substantial area of land being the northern part of the tract surveyed by Fuata together with certain portions on and about the location of the road to Aoa. However, we find his claim to be the least believable. It was essentially founded either on ancestral permission or upon the alternative claim that the occupants of the land were descendants of a former Gogo. Gogo failed to, and indeed could not, provide any adequate corroborating proof of possession at any time. He appeared to be primarily concerned with what he perceived as insurgency on the part of the village orators, Fuata and Manaea, who were seen as stepping out of line and not knowing their places. As opposed to the presentation of a defined claim for registration in metes and bounds, Gogo was content to simply seek a denial of Fuata's registration application. We conclude that Gogo's objection to the registration of that separation agreement between Fuata and Pasa Turituri, being the subject matter of *Gogo v. Fuata*, LT No. 19-89, is without merit.

Utu as the other counter-claimant did provide a survey of his claim to "Mataava." His survey varied only slightly from the Fuata's. With regard to this claim, we are satisfied on the evidence that the disputed land area contains Utu's traditional maota site, as well as the village malae. We further accept Utu's testimony that his traditional maota site was yielded for the use of the village church (Congregational Christian Church in American Samoa). In addition, the evidence was clear regarding an established presence by the Utu family on the eastern part of Mataava. This presence is significantly evident with the location of tombs of former Utu titleholders adjacent to the church building, together with the continuing occupancy of the eastern part of the land by a number of Utu family structures to the notable exclusion of the Fuata and Gogo people. This eastern part of Mataava is also the location of Livingstone Utu's home, the subject matter of *Fuata v. Utu, Livingstone Poasa Utu*, LT No. 9-89. We see no basis to Fuata's claim in derogation of Livingstone's right, as a member of the Utu family, to continuing possession and enjoyment of his residential situs.

However, while the evidence clearly demonstrated the Utu family's exclusive presence on the eastern part of Mataava, the evidence was equally clear that western part of Mataava has been in the occupation of the Fuata family to the exclusion of the Utu family. Fuata has a guest house located on this western side of "Mataava," together with a number of Fuata family structures. Additionally, the signing of separation

agreements for homes to be built by family members on communal land is legally the function of the matai. A.S.C.A. § 37.1503(a). The more reliable documentary evidence[5] submitted by the parties corroborates Fuata's exercise of pule on the western portions of the land (just as it also corroborated Utu's exercise of pule on the eastern side) when he executed separation agreements on behalf of the Fuata family for a number of structures found on western side of "Mataava." On the other hand, Utu's assertion that lesser matai in his family were in the habit of signing separation agreements on the family's behalf is hardly a convincing explanation for his family's recurring failure to object to what otherwise would be an unwarranted usurpation of Utu's pule by Fuata. This is yet another aspect of the "permission" theory presented to explain an adverse fact which is really beyond contention.

On the foregoing, we conclude that the evidence preponderates in favor of Utu with regard to the eastern part of "Mataava," but in favor of Fuata with regard to "Mataava's" western area. Both of these parties have failed to prove entitlement to the full extent of their respective claims as surveyed and, therefore, registration shall not only be denied to the applicant Fuata but also to counter-claimant Utu. Judgment will enter accordingly; however, Utu and Fuata are encouraged to draw that dividing line consistent with their respective interests to the land in accordance with the findings above. Such a line was roughly suggested in Utu's survey, exhibit "18."

It is so Ordered.

---

[5] A few of the documentary exhibits of more recent origin looked very much like attempts at self-aggrandizement. These documents were quite obviously prepared, and even altered, in anticipation of an impending lawsuit.